IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY ALLAN GEORGE, | ) |
| Petitioner, | ) ) ) |
| v. | ) )  Case No. CIV-20-00108-JD |
| SCOTT NUNN, Warden, | ) ) ) |
| Respondent.[1] | ) |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation issued by United States Magistrate Judge Suzanne Mitchell on December 16, 2020. [Doc. No. 39]. Judge Mitchell recommends that the Court grant Respondent's Motion to Dismiss [Doc. Nos. 35, 36] and dismiss Petitioner Gregory Allan George's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No. 23] as untimely. Judge Mitchell also recommends that the Court deny as moot Mr. George's motion for leave to conduct discovery [Doc. No. 38].

Judge Mitchell advised Mr. George of his right to object to the Report and Recommendation by January 6, 2021. Mr. George filed a timely objection [Doc. No.

---

[1] The Court substitutes Scott Nunn, Warden of the James Crabtree Correctional Center in Helena, Oklahoma, as Respondent in this action. Mr. George alleges he is incarcerated at that facility. [Doc. No. 23 at 1]. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Court ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody."). Mr. Nunn is the current warden.

40],[2] and the Court has therefore conducted a *de novo* review of those portions of the Report and Recommendation to which Mr. George objected, consistent with 28 U.S.C. § 636(b)(1).

Having carefully reviewed Mr. George's habeas petition and brief in support, the parties' briefing on Respondent's motion to dismiss, the Report and Recommendation, and Mr. George's objection, and for the reasons stated below, the Court ACCEPTS and ADOPTS the Report and Recommendation as MODIFIED in this Order and DISMISSES Mr. George's habeas petition as untimely.

## I. BACKGROUND

### A. Procedural History

On March 10, 2016, an Oklahoma County jury in Case No. CF-2013-8064 found Mr. George guilty of one count of indecent or lewd acts with a child under sixteen, and the state district judge sentenced Mr. George to 28 years' imprisonment. Am. Pet. [Doc. No. 23] at ¶¶ 1–6. Mr. George directly appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). *Id.* ¶¶ 8–9. The OCCA affirmed his judgment and sentence and denied his request for an evidentiary hearing in a summary opinion issued September 14, 2017. *Id.* ¶ 9; *see also* Summary Opinion [Doc. No. 36-3]. Mr. George did not seek certiorari review in the United States Supreme Court. Am. Pet.

---

[2] The Court deems the objection filed on the day Mr. George gave it to prison authorities for mailing. *Price v. Philpot*, 420 F.3d 1158, 1164 n.4 (10th Cir. 2005) (citing *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989) (per curiam)). Mr. George mailed his objection on January 4, 2021, and it was received and filed on January 11, 2021. *See also* Rule 3(d) ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. . . . .").

at ¶ 9(h).

On April 3, 2018, Mr. George, through counsel, filed a motion in the state district court to modify his sentence. *Id.* ¶ 11(a); *see also* Mot. to Modify Sentence [Doc. No. 36-4]. The state district court denied that motion on April 19, 2018, after a hearing. Am. Pet. at ¶ 11(a); Docket [Doc. No. 36-5].

Mr. George then filed a pro se motion to "check-out" transcripts on September 19, 2018, which the state district court denied on October 12, 2018. Am. Pet. at ¶ 11(b); [Doc. Nos. 36-6, 36-7].

Mr. George filed his first pro se application for post-conviction relief along with a brief in support and multiple attachments in the state district court on January 11, 2019.[3] App. for Post-Conviction Relief [Doc. No. 36-8]; Attachments [Doc. No. 36-9]; Propositions [Doc. No. 36-10]; *see also* Am. Pet. at ¶ 12. The state responded, and Mr. George moved to amend and supplement his post-conviction application. [Doc. Nos. 36-11, 36-12, 36-13]. After denying Mr. George's motion to amend and a request for post-conviction counsel, the state district court denied the post-conviction application on April 15, 2019. [Doc. Nos. 36-14, 36-15]. Mr. George, through counsel, appealed the denial to the OCCA. [Doc. Nos. 36-16, 36-17]. The OCCA affirmed the district court's denial of post-conviction relief in an order issued October 23, 2019. [Doc. No. 36-18].

---

[3] The prison mailbox rule does not apply to post-conviction filings in Oklahoma state district courts. *Moore v. Gibson*, 27 P.3d 483, 484 (Okla. Ct. Crim. App. 2001); *see also Hall v. Ward*, 117 F. App'x 18, 20 (10th Cir. 2004) (unpublished). Under Oklahoma law, an application for post-conviction relief is "filed" when it is delivered to the proper court for filing. *Moore*, 27 P.3d at 484. Mr. George's application was received and filed in the District Court of Oklahoma County on January 11, 2019. [*See* Doc. No. 36-8].

3

On May 16, 2019, while his post-conviction appeal was pending, Mr. George filed a second motion to check out transcripts in the state district court. Am. Pet. at ¶ 11(c). The state district court denied the motion on December 10, 2019. *Id.* Mr. George appealed this denial to the OCCA on January 23, 2020, but the OCCA declined jurisdiction on timeliness grounds in an order issued February 11, 2020. *Id.* ¶ 11(e); Pet. in Error [Doc. No. 36-23]; Order [Doc. No. 36-24]. Mr. George petitioned the OCCA for an appeal out-of-time, but the court dismissed the matter on June 5, 2020. Am. Pet. at ¶ 11(f); Pet. for Out of Time Appeal [Doc. No. 36-26]; Order [Doc. No. 36-27]. Mr. George also sought relief from the denial of the motion for transcripts in a second application for post-conviction relief filed on May 13, 2020. [Doc. No. 36-25]. The state district court denied the second application on September 21, 2020.[4] Mr. George appealed. The OCCA held that his second application was properly construed as an application for extraordinary relief, and it denied relief on March 1, 2021.[5]

Meanwhile, on February 6, 2020,[6] Mr. George submitted his original habeas corpus petition in this Court, along with an application for leave to proceed *in forma*

---

[4] *See* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=cf-2013-8064. The Court takes judicial notice of Mr. George's criminal docket sheet in Oklahoma County District Court Case No. CF-2013-8064. *See United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (exercising discretion "to take judicial notice of publicly-filed records in [this] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand") (citation omitted).

[5] *See* OCCA Case No. MA-2020-735, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=MA-2020-735&cmid=129044.

[6] Although Mr. George did not verify when he gave the Petition to prison authorities for mailing, it was post-marked February 6, 2020. [Doc. No. 1 at 26; Doc. No.

*pauperis.* [Doc. Nos. 1, 2]. The Court denied the *in forma pauperis* motion on March 12, 2020, and ordered Mr. George to pay the $5.00 filing fee by April 2, 2020. [Doc. No. 9]. When he did not timely pay the filing fee, the Court entered an order and judgment dismissing this case. [Doc. Nos. 11, 12]. Upon Mr. George's motion to reconsider and payment of the filing fee [Doc. Nos. 14, 16], the Court vacated its judgment and referred this matter to Judge Mitchell [Doc. Nos. 15, 17].

Judge Mitchell granted Mr. George leave to amend his habeas petition [Doc. No. 18], and on July 22, 2020, the Court received and filed his amended petition for writ of habeas corpus. [Doc. No. 23]. Mr. George also filed a brief in support on August 7, 2020. [Doc. No. 28].

### B. Mr. George's Claims for Habeas Relief

Mr. George raises twelve grounds for relief in his amended habeas petition. In Ground One, he asserts his appellate counsel was ineffective. Am. Pet. at 6. In Grounds Two and Three, he alleges ineffective assistance of trial counsel. *Id.* at 7–8. In Ground Four, Mr. George alleges state trial court error, and violations of his state and constitutional rights, in how evidence was admitted. *Id.* at 9. He asserts in Ground Five that the evidence was insufficient to support his conviction. *Id.* at 10. In Ground Six, Mr. George alleges "jury misconduct/jury tampering contributed to [his] conviction." *Id.* at 11. He asserts in Ground Seven that the state failed to disclose "'Brady' information after a request from defense counsel." *Id.* at 12. In Ground Eight, Mr. George asserts trial

---

1-11]. Accordingly, it is deemed filed on that date. *See Fleming v. Evans*, 481 F.3d 1249, 1255 n.2 (10th Cir. 2007); *Hoggro v. Boone*, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

errors "resulted in the conviction of one who is actually innocent." *Id*. at 13. Mr. George argues in Ground Nine that prosecutorial misconduct violated his right to due process and resulted in his conviction. *Id*. at 14. In Ground Ten, Mr. George alleges "judicial bias contributed to [his] conviction." *Id*. at 15. He asserts in Ground Eleven that the state trial court judge's rulings denied him the right to present a complete defense. *Id*. at 16. And in Ground Twelve, Mr. George argues the "accumulation of error warrants reversal." *Id*. at 17.

### C. The Report and Recommendation

Judge Mitchell ordered Respondent to file an answer, motion, or other response to Mr. George's amended habeas petition [Doc. No. 29], and on August 31, 2020, Respondent moved to dismiss the petition as untimely. [Doc. Nos. 35, 36]. Respondent contends that Mr. George did not file his original habeas petition within the one-year limitations period established in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d), and that there are no grounds to apply equitable tolling or an equitable exception that would make his petition timely.

Mr. George filed a response in opposition to the motion to dismiss. [Doc. No. 37]. He acknowledges that he miscalculated when his AEDPA limitations period began to run, but he asserts that he is entitled to tolling during the periods in which his motions to check out trial transcripts were pending and when the law library was closed. Mr. George also maintains that he is actually innocent. Respondent did not file a reply.

Judge Mitchell issued a Report and Recommendation, agreeing with Respondent that Mr. George's Petition was time-barred and should be dismissed. Judge Mitchell

determined that Mr. George's conviction and sentence became final on December 13, 2017, 90 days after the OCCA affirmed his conviction on September 14, 2017. [Doc. No. 39 at 7]. Judge Mitchell concluded that Mr. George's statutory one-year limitations period began to run the following day and, absent tolling, expired one year later, on December 14, 2018. *Id.*

Judge Mitchell found that Mr. George was entitled to 17 days of statutory tolling during the time his motion to modify sentence was pending. *Id.* at 9. Accounting for this tolling period, Judge Mitchell concluded that Mr. George's one-year statute of limitations under AEDPA expired on December 31, 2018. *Id.* She found no basis to apply additional statutory tolling based on Mr. George's motions to check out transcripts and found that his application for post-conviction relief did not toll the statute of limitations because it was filed after the AEDPA limitations period had already expired. *Id.* at 10–11.

Judge Mitchell also concluded that Mr. George was not entitled to equitable tolling based on his difficulty obtaining trial transcripts or because of periodic closures or understaffing of the law library. *Id.* at 13–15. Judge Mitchell further concluded that he had not made a credible showing of actual innocence that would justify an exception to the statutory limitations period. *Id.* at 15–16.

### D. Mr. George's Objections

Mr. George raises three objections to the Report and Recommendation. First, he objects to the Report and Recommendation's reliance on *May v. Workman*, 339 F.3d 1236 (10th Cir. 2003), which states that a motion for transcripts is not a basis for statutory tolling. [Doc. No. 40 at 1–2]. Second, he argues that law library closures in

7

December 2018 prevented him from timely filing his first state application for post-conviction relief. He asserts that he could not mail the application sooner because he needed the law librarian to verify it. He explains that he was allowed in the library only on Mondays and that the library was closed on Monday, December 24, 2018, and Monday, December 31, 2018, for the holidays. [*Id.* at 2]. Third, Mr. George argues that there was structural error in his trial and that failure to reverse his conviction would result in a miscarriage of justice. [*Id.* at 3–4].

## II.  DISCUSSION

AEDPA requires an application for a writ of habeas corpus to be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Judge Mitchell concluded that subsection (A) provides the relevant starting date. Mr. George did not object to this conclusion, and the Court accepts it without further analysis.

8

The OCCA affirmed Mr. George's sentence and conviction on September 14, 2017. He had 90 days from that date, or until December 13, 2017, to petition the United States Supreme Court for certiorari. *See* S. Ct. R. 13.1. Mr. George did not seek certiorari, and therefore his conviction became final on December 13, 2017, when the time for seeking direct review expired. *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011); *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) ("Under [§ 2244(d)(1)(A)], a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until . . . after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed." (citation omitted)).

Mr. George's one-year statute of limitations began to run the next day, December 14, 2017 and, absent tolling, expired one year later on December 14, 2018. *See United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003).

**A. Statutory Tolling**

The AEDPA provides for tolling of the limitation period while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" before the state courts. 28 U.S.C. § 2244(d)(2).

As discussed above, Judge Mitchell determined that Mr. George was entitled to 17 days of statutory tolling while his motion to modify sentence was pending in the state trial court. Mr. George does not object to this conclusion (and neither does Respondent), and the Court accepts this portion of the Report and Recommendation without further analysis.

Judge Mitchell also correctly concluded that Mr. George's motions to check out transcripts did not statutorily toll the limitations period. Statutory tolling under the AEDPA is available only while a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). The Tenth Circuit has repeatedly held that motions to obtain trial transcripts are not collateral proceedings and therefore do not toll the limitations period under § 2244(d)(2). *See May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (holding that district court properly determined that AEDPA limitations period was not tolled during pendency of various motions for transcripts and petitions for writs of mandamus relating to those motions); *Mack v. Falk*, 509 F. App'x 756, 758 (10th Cir. 2013) (unpublished) (same); *Osborne v. Boone*, 176 F.3d 489 (Table), 1999 WL 203523, at *1 (10th Cir. 1999) (unpublished) ("[A]ttempts to obtain trial records and transcripts at public expense are not collateral proceedings which would result in the tolling of the filing period under § 2244(d)(2).") (citing *Hoggro*, 150 F.3d at 1226–27).

Mr. George objects to this conclusion, arguing that the Court should not apply *May v. Workman* "in a rigid sense of stare decisis," citing *Kotteakos v. United States*, 328 U.S. 750 (1946), and should consider the prejudice that resulted from the state trial court's denial of his motions for transcripts. But the statute is clear: the limitations period is tolled only for properly filed applications for state post-conviction relief or other collateral review of the judgment or claim. Moreover, Mr. George offers no authority supporting the view that a motion to check out transcripts is a proceeding for collateral

10

review, nor does he advance any argument that *May* or the other authorities cited above were wrongly decided.

Accordingly, the Court overrules Mr. George's objection. Judge Mitchell correctly determined that the limitations period was not statutorily tolled while Mr. George's motions to check out transcripts were pending.

Judge Mitchell also concluded that statutory tolling was not available while Mr. George's application for state post-conviction relief was pending because the application was filed after the AEDPA limitations period expired. The Court agrees. "Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations." *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006); *see also Fisher v. Gibson*, 262 F.3d 1135, 1143 (10th Cir. 2001) (statutory tolling not applicable if petition for post-conviction relief is filed after limitations period). Mr. George's application was filed on January 11, 2019—eleven days after the one-year limitations period expired on December 31, 2018. Because his application was filed after the expiration of his AEDPA limitations period, it could not statutorily toll that limitations period.[7]

## B. Equitable tolling

To obtain equitable tolling, Mr. George must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631,

---

[7] For the same reason, there is no statutory tolling for Mr. George's second application for post-conviction relief, which was filed after his federal habeas petition and long after the one-year limitations period expired.

11

649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Even assuming a diligent pursuit of rights, the one-year period of limitation "is subject to equitable tolling . . . only in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). This is a "strong burden" that requires the petitioner "to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Examples of "rare and exceptional circumstances" for equitable tolling include "when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson*, 232 F.3d at 808 (cleaned up). "Simple excusable neglect is not sufficient. Moreover, a petitioner must diligently pursue his federal habeas claims; a claim of insufficient access to relevant law, such as AEDPA, is not enough to support equitable tolling." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)).

Judge Mitchell concluded that Mr. George's difficulty obtaining trial transcripts was not an extraordinary circumstance and that Mr. George had not shown the necessary diligence, given that he did not request the transcripts until September 2018—nine months after his conviction was final—and did not seek state post-conviction relief until after the expiration of the limitations period. [Doc. No. 39 at 13]. Judge Mitchell further concluded that Mr. George was not entitled to equitable tolling based on his limited

access to the prison law library in December 2018. She reasoned that limited time in the law library was not an extraordinary circumstance and that Mr. George had not shown that he took any specific steps to diligently pursue his claims despite the law library's intermittent closure. [*Id.* at 14–15].

Mr. George objects, arguing that he was prejudiced by the lack of access to his trial transcripts and that closures of the law library in December 2018 prevented him from filing for post-conviction relief prior to expiration of the AEDPA limitations period on December 31, 2018. He explains that he was allowed in the library only on Mondays and that the library was closed on Monday, December 24, 2018, and Monday, December 31, 2018, for the holidays. He asserts that he needed a law librarian to verify his state application for post-conviction relief and thus could not mail it sooner than he did, on January 7, 2019.

The Court finds these objections unpersuasive for the same reasons stated in the Report and Recommendation. With respect to the law library closures, the Court additionally notes that even if it were true that Mr. George needed a law librarian to verify his application for state post-conviction relief before it could be filed,[8] the Court would still find that Mr. George had not shown a diligent pursuit of his claims. Facility officials informed Mr. George on December 17, 2018, that if he "ha[d] and [could] show a deadline" he would "receive more time to work on [his] case." [*See* Doc. No. 37-1 at 4].

---

[8] The OCCA has explained that an application for post-conviction relief is "verified" if it is signed under penalty of perjury as specified under 12 Okla. Stat. § 426. *See Dixon v. State*, 2010 OK CR 3, 228 P.3d 531 n.3. Thus, Mr. George's application did not have to be notarized.

13

But there is nothing before the Court showing Mr. George made any requests for additional time in the library or made other diligent efforts to submit his application prior to December 31, 2018.

Furthermore, even if Mr. George had shown a basis for equitable tolling during the period his application for state post-conviction relief was pending, he waited an additional three months after the OCCA affirmed denial of post-conviction relief before filing his federal habeas petition. Mr. George has not pointed to any extraordinary circumstances that prevented him from filing his habeas petition earlier, nor does he set forth any specific steps taken by him to diligently pursue his claims after the OCCA denied post-conviction relief. Under these circumstances Mr. George is not entitled to equitable tolling. *See Marsh v. Soares*, 223 F.3d 1217, 1220–21 (10th Cir. 2000) (holding that the petitioner failed to show that equitable tolling should apply).

### C. Equitable Exception for Miscarriage of Justice

In *McQuiggin v. Perkins*, the Supreme Court recognized that "a credible showing of actual innocence" provides an equitable exception to AEDPA's statute of limitations. 569 U.S. 383, 392 (2013). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting

14

reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

Judge Mitchell concluded that Mr. George has not presented new, reliable evidence of actual innocence and thus is not entitled to an exception to the limitations period. [Doc. No. 39 at 15–16]. Mr. George does not specifically object to Judge Mitchell's conclusions with respect to his showing of actual innocence. Instead, he argues that his trial was plagued with structural error—namely, the introduction of child hearsay evidence—and that failure to reverse his conviction would therefore result in a miscarriage of justice. [Doc. No. 40 at 3–4].

However, in *McQuiggin*, the Supreme Court emphasized that "[t]he miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" 569 U.S. at 394–95 (quoting *Schlup*, 513 U.S. at 329); *see also Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, th[e] Court [has] explicitly tied the miscarriage of justice exception to the petitioner's innocence."). Thus, it is not enough for Mr. George to point to structural error in his trial; he must make "a credible showing of actual innocence." *McQuiggin*, 569 U.S. at 392.

Although Mr. George did not specifically object to the Report and Recommendation's conclusion that he had not presented new, reliable evidence of actual innocence, the Court has reviewed the matter *de novo*. Having completed that review, the

15

Court agrees that Mr. George has not made a credible showing of actual innocence.

Mr. George submits the following evidence in support of his actual innocence claim:

- The results of two polygraph tests administered prior to his trial, one of which showed results of "non-deceptive" and one of which was "Inconclusive as to Deception" with regard to questions about Mr. George's alleged sexual abuse of victim A.P. [Doc. No. 28-12];

- Two affidavits from Mr. George's trial counsel stating counsel's belief in Mr. George's actual innocence [Doc. No. 28-9];

- The affidavit of Colleen Folsch, a friend of A.P.'s father, stating her belief that A.P. was coached to make sexual abuse allegations about Mr. George [Doc. No. 28-10]; and

- Various emails, text messages, and Facebook posts from A.P.'s father and step-mother, which Mr. George contends show the pair's motive to obtain sole custody of A.P. [Doc. Nos. 37-3, 37-4, 28-2, 28-7].

*See also* Pet'r's Br. in Support of Pet. for Habeas [Doc. No. 28] at 16–17, 36–38; Resp. in Opp. to Mot. to Dismiss [Doc. No. 37] at 6–8.[9]

The Court is not persuaded that in light of the above evidence no juror, acting reasonably, would have voted to find Mr. George guilty beyond a reasonable doubt. First,

---

[9] Mr. George also asserts that A.P.'s step-mother, Lahra Crookston, has borderline personality disorder; that Ms. Crookston made a statement that Mr. George told A.P.'s father that the alleged sexual abuse did not occur; that an audio recording in which A.P. described Mr. George's sexual abuse was pre-planned; and that A.P.'s forensic interview contained contradictions. However, Mr. George has not provided the Court with evidence of these facts. And even if he had, the evidence amounts only to impeachment evidence, not exculpatory evidence. *See Stafford v. Saffle*, 34 F.3d 1557, 1562 (10th Cir. 1994) (new evidence was "only impeachment evidence, rather than evidence of actual innocence"). Further, the record indicates Mr. George's defense counsel presented or attempted to present this evidence to the jury, or that the jury heard the information. *See* OCCA's Summary Opinion [Doc. No. 36-3] at 4, 6 & n.3; Pet'r's Br. [Doc. No. 28] at 19–20, 46–47. Thus, it is not "new."

the reliability of Mr. George's polygraph evidence is dubious. In Oklahoma, polygraph evidence is not admissible for any purpose. *See Folks v. State*, 207 P.3d 379, 383 (Okla. Crim. App. 2008). Although the Court is not bound by the rules of admissibility that would govern at trial, it must still consider the reliability and probative force of that evidence. *Schlup*, 513 U.S. at 327. And state and federal courts have consistently expressed doubts about the reliability of polygraph evidence. *See, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 309–12 (1998) ("[T]here is simply no consensus that polygraph evidence is reliable" . . . . "Although the degree of reliability of polygraph evidence may depend upon a variety of identifiable factors, there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams."); *United States v. Call*, 129 F.3d 1402, 1404–05 (10th Cir. 1997) (holding that *Daubert* standard applied to polygraph evidence, but cautioning that the Court's holding "does not suggest a newfound enthusiasm for polygraph evidence" or "imply that polygraph examinations satisfy the requirements of Rule 702."); *Burch v. Millas*, 663 F. Supp. 2d 151, 195 (W.D.N.Y. 2009) (holding the petitioner could not show his favorable polygraph test results were reliable new evidence for purposes of demonstrating actual innocence). Second, the polygraph evidence is itself not consistent. Only the second test indicated that Mr. George was truthful as to all questions asked of him; the first was inconclusive.

Mr. George's other evidence goes only to bolstering his own credibility and calling into question the motives of the witnesses who testified at his trial. "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not

17

necessarily satisfy [the actual innocence] standard." *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014).

A.P. testified at trial that Mr. George sexually abused her and was subject to cross-examination about those allegations. Mr. George likewise testified at trial and denied any inappropriate behavior. *See* OCCA's Summary Opinion [Doc. No. 36-3] at 2, 6. The jury had an opportunity to weigh the credibility of each witness and make a determination. Under these circumstances, and considering the limited value of the evidence Mr. George has presented, the Court cannot find that no juror, acting reasonably, would have voted to find Mr. George guilty beyond a reasonable doubt. Accordingly, Mr. George is not entitled to an equitable exception to the limitations period based on actual innocence.

## III.   APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, Mr. George must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. George can satisfy this standard by demonstrating that jurists of reason could debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). After considering this Order, the Report and Recommendation, and the record, the Court finds that reasonable jurists could not debate the Court's determinations that Mr. George's habeas petition is

untimely under § 2244(d)(1)(A). Because Mr. George cannot make the required showing, the Court declines to issue a certificate of appealability.

## IV.  CONCLUSION

Having carefully and thoroughly considered this matter *de novo*, and for the reasons discussed above, the Court:

(1) ADOPTS the Report and Recommendation issued by Magistrate Judge Suzanne Mitchell [Doc. No. 39], as MODIFIED herein;

(2) GRANTS Respondent's Motion to Dismiss [Doc. No. 35];

(3) DISMISSES this action as untimely;

(4) DENIES AS MOOT Petitioner's Motion for Leave to Conduct Discovery [Doc. No. 38]; and

(5) DENIES a certificate of appealability.

IT IS SO ORDERED this 31st day of January 2022.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE